UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THERESA HIGGS-WILSON,

      Plaintiff,

  v.

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.

17-CV-768
DECISION AND ORDER

---

On August 9, 2017, the plaintiff, Theresa Higgs-Wilson, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On June 7, 2018, Higgs-Wilson moved for judgment on the pleadings, Docket Item 14; on August 30, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 20; and on September 26, 2018, Higgs-Wilson replied.

For the reasons stated below, this Court grants Higgs-Wilson's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On October 30, 2013, Higgs-Wilson applied for disability insurance benefits. Docket Item 9-2 at 18. On November 27, 2013, she applied for supplemental security income. Docket Item 9-5 at 11. She was fifty-six years old when she filed these

applications, Docket Item 9-6 at 3, and she claimed that she had been disabled since December 30, 2012, due to acute renal failure, diabetes, Crohn's disease, thyroid disease, and high blood pressure. Docket Item 9-3 at 4-5.[1]

On February 28, 2014, Higgs-Wilson's application was denied because she was not disabled under the Act. *Id.* at 14, 25. She requested a hearing before an administrative law judge ("ALJ"), Docket Item 9-4 at 20, which was held on May 19, 2016, Docket Item 9-2 at 35, about two months before Higgs-Wilson's fifty-ninth birthday, Docket Item 9-6 at 3. The ALJ then issued a decision on June 13, 2016, confirming the finding that Higgs-Wilson was not disabled. Docket Item 9-2 at 29. Higgs-Wilson appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 2-4.

## II. THE VOCATIONAL ASPECT OF THE HEARING

Because Higgs-Wilson was a person "of advanced age," 20 C.F.R. § 404.1568(d)(4) (55 or older), the ALJ called a vocational expert ("VE") to give an opinion not only as to whether she could perform her old job, but also as to the transferability of her work skills to other jobs in the national economy. The VE testified that Higgs-Wilson "learned" the following "skills" over the course of her fifteen years of previous employment: "customer service skills, developing . . . reports, communication, [and] interacting with others." Docket Item 9-2 at 93. Additionally, the VE found that Higgs-Wilson had developed "writing skills [and] basic math" skills. *Id.* at 94.

---

[1] At the hearing, Higgs-Wilson amended her alleged onset date to June 1, 2013. Docket Item 9-2 at 18.

2

## III. THE ALJ'S DECISION

In denying Higgs-Wilson's application, the ALJ evaluated her claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled

and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Higgs-Wilson had not engaged in "substantial gainful activity" since June 1, 2013, the alleged onset date. Docket Item 9-2 at 20. At step two, the ALJ found that Higgs-Wilson had the following severe impairments: "lumbago, diabetes mellitus, [and] obesity." *Id*. At step three, the ALJ determined that these severe impairments did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Docket Item 9-2 at 23.

In assessing Higgs-Wilson's RFC, the ALJ determined that she could perform "the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)."[2] Docket Item 9-2 at 24. The ALJ based this finding on evidence in the record, including

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

the opinions of Abrar Siddiqui, M.D., a consulting physician, and Gregory Fabiano, Ph.D., a consulting psychologist. *Id.* at 25-26. At step four, the ALJ determined that Higgs-Wilson was "unable to perform any past relevant work." *Id.* at 27. But at step five, the ALJ concluded that Higgs-Wilson could perform "jobs existing in significant numbers in the national economy." *Id.* Specifically, the ALJ determined that Higgs-Wilson could work as a hostess, a chief aide, or a companion. *Id.* at 28. The ALJ based this determination on her findings that Higgs-Wilson had acquired the transferable work skills identified by the VE at the hearing: "customer service skills, developing reports, communication, interacting with others, writing skills and basic math." *Id.* at 27.

## **STANDARD OF REVIEW**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## **DISCUSSION**

Higgs-Wilson argues that the ALJ erred in four ways. Docket Item 14-1 at 11-20. First, she argues that the transferable skills found by the ALJ were not supported by substantial evidence. *Id.* at 11-13. Next, she argues that the ALJ erred in weighing the evidence from Dr. Fabiano and "Dr. Totin[,] the non-examining review physician." *Id.* at 13-15.[3] She also argues that the ALJ erred in failing to address her nonsevere impairments in formulating her RFC. *Id.* at 15-18. Finally, she argues that the ALJ erred when she did not rely on any opinion evidence about Higgs-Wilson's physical abilities. *Id.* at 18-20.

SSA regulations "take into account the effect of a claimant's age and work experience on [her] ability to engage in any other kind of substantial gainful work." *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). More specifically, the regulations provide that

> [i]f you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have the skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). . . .

20 C.F.R. § 404.1568(d)(4). In addition,

> [t]he SSA's table of medical-vocational guidelines . . . requires that a claimant of advanced age who is at least a high school graduate, who previously held a skilled or semi-skilled job that [she] can no longer perform but who has the [RFC] to perform light work, is not to be found disabled if

---

[3] The defendant refers to "Dr. Totin" as "a state agency consultant and psychologist." *See* Docket Item 20-1 at 14. In the record, however, no credentials or postnominals are listed, and the pertinent medical records are signed as "M. Totin" with the specialty code "38." *See, e.g.*, Docket Item 9-3 at 2, 3, 14, 22, 25.

6

> [she] has job skills that are transferable but must be found disabled if [she] does not.

*Draegert*, 311 F.3d at 473.

Thus, a claimant who fulfills the 1568(d)(4) age requirement and is limited to sedentary or light work is not disabled only if she has skills obtained through her previous work and only if those skills are transferable to other jobs in the national economy. The reasoning behind that rule is that "a person of advanced age has little time to learn a new skill and apply it to a new job, especially if his ability to work has been limited by a medical disability." *Id.* at 475.

Paragraphs (1) through (3) of 20 C.R.F. § 404.1568(d) govern the transferability of skills:

> (1) *What we mean by transferable skills.* We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in the past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
>
> (2) *How we determine skills that can be transferred to other jobs.* Transferability is most probable and meaningful among jobs in which—
>
> > (i) The same or a lesser degree of skill is required;
> >
> > (ii) The same or similar tools and machines are used; and
> >
> > (iii) The same or similar raw materials, products, processes, or services are involved.
>
> (3) *Degrees of transferability.* There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability.

*Draegert*, 311 F.3d at 473 (quoting 20 C.F.R. §§ 404.1568(d)(1)-(3)) (emphasis in original).

7

"[F]or purposes of determining disability under the Act, . . . there is an inherent difference between aptitudes and skills." *Id.* at 474.

> *A skill is a knowledge of a work activity* which requires the exercise of significant judgment that goes beyond carrying out of simple job duties *and is acquired through performance of an occupation* which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.
>
> Skills are not gained by doing unskilled jobs, and a person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs . . . . A person's acquired work skills may or may not be commensurate with his or her formal educational attainment.

*Id.* at 473-474 (quoting SSR 82-41 at **1-3) (emphasis in original). By contrast, an aptitude

> is an innate ability [rather than] a learned ability . . . . While a person may have natural talents including dexterity, general coordination, space relations, etc., that same person may not have the particular learned ability to do a specific job.

*Id.* at 475 (quoting *Weaver v. Sec'y of Health and Human Servs.*, 722 F.2d 310, 311-12 (6th Cir. 1983)).

In assessing the disability of a claimant of advanced age under 20 C.F.R. § 404.1568(d)(4), the ALJ must articulate the vocational skills that the claimant acquired from past employment with "sufficient specificity." *Clark v. Berryhill*, 697 F. App'x 49, 52 (2d Cir. 2017). In addition, the ALJ must demonstrate "sufficiently specific findings" about the transferability of those skills to other jobs in the national economy. *Id.* This requires the ALJ to "link" the skills found by the VE to a "particular task" that is specific

8

to the performance of the other jobs that the VE recommends. *Draegert*, 311 F.3d at 476. When an ALJ fails to do so, the findings are not supported by substantial evidence, and remand is required. *Clark*, 697 F. App'x at 52; *see also Ferraris v. Heckler*, 728 F.2d 582, 587-88 (2d Cir. 1984).

In performing that exercise, ALJs and VEs must not "phrase[]" the claimant's transferable skills "so vaguely" that they might "apply to jobs that are vastly different from the claimant's past relevant work." *Biernacki v. Colvin*, 2016 WL 4925850, at *5 (W.D.N.Y. Sept. 16, 2016). Otherwise, the ALJ or VE would "effectively negate[]" the presumption that a person of advanced age without transferable skills is disabled under 20 C.F.R. § 404.1568(d)(4). *Draegert*, 311 F.3d at 475 (quoting *Weaver*, 722 F.2d at 312).

Here, the VE testified that Higgs-Wilson had acquired the skills of "customer service[,] . . . developing reports, communication, interacting with others, writing . . . and basic math" from her previous occupations. Docket Item 9-2 at 27. The VE also testified that these skills are transferable to the occupations of hostess, chief aid, and companion. *Id.* at 95. But the VE never articulated any "link" between those vaguely-phrased skills and any "particular task" required by these occupations. *See id.* at 93-98. The ALJ then adopted the VE's findings without further elaboration, never sufficiently specifying those skills or addressing how Higgs-Wilson's acquired skills would help her transition to one of the new jobs. *Id.* at 27-28. Accordingly, ALJ erred by failing to demonstrate "sufficiently specific findings" about the transferability of Higgs-Wilson's skills to the other positions in the national economy recommended by the VE. *Clark*, 697 F. App'x at 52.

9

Higgs-Wilson also argues that "some of the [VE's] cited 'skills' were merely aptitudes." Docket Item 14-1 at 11. In the case of writing and basic math, she is correct. One court has held that abilities such as reading, writing, and arithmetic are not transferable skills under SSR 82-41 but are "educational factors," evincing little more than the fact that the claimant possesses a high school education. *Castle v. Colvin*, 2017 WL 3939362, at *5 (W.D.N.Y. Sept. 8, 2017). Here, for example, the VE did not, and indeed cannot, demonstrate how Higgs-Wilson's knowledge of math and writing can be distinguished from the math and writing taught to each child in our public-school system. Accordingly, they are not skills that Higgs-Wilson "*acquired through performance of an occupation*," and they do not qualify as transferable skills under the regulations discussed above. *Draegert*, 311 F.3d at 473 (quoting SSR 82-41 at **1-3) (emphasis in original).[4]

---

[4] In *Burton v. Sec'y of Health and Human Servs.*, 893 F.2d 821, 823 (6th Cir. 1990), the court explained that under Sixth Circuit precedent, "cashier's skills are transferable" skills. (citing *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). The court specifically noted that "a bundle of acquired, transferable skills ranging from basic math to customer service and industry functions" associated with work as a cashier were transferable. *Id*. But the court also cast doubt upon the reasoning it applied. It conceded that "some members of the panel may disagree with the reasoning of [the Sixth Circuit precedent leading to the court's conclusion, but that] a contrary conclusion would show disrespect for precedent and would tend to destabilize the law in the Sixth Circuit." *Id*. at 823-24. Moreover, the court's analysis in *Burton* at least linked those particular math and customer service skills with the job requirements of a cashier, thus making some effort to make the vague more specific. That did not happen here.

The remaining skills found by the VE—"customer service[,] . . . developing . . . reports, communication, and interacting with others"—may or may not be transferable skills, depending on whether they apply to specific, industry-related contexts. *See, e.g., Demarco v. Comm'r of Soc. Sec.*, 2018 WL 3616258, at *3 (N.D. Ohio July 30, 2018) ("While, as a general matter, some people may have a natural inclination to get along with others . . . , having the ability to interact with others *in order to determine product need*, is certainly the type of learned ability relating to specific activities one acquires through work.") (emphasis in original); *see also Albors v. Sec'y of Health & Human Servs.*, 817 F.2d 146, 148 (1st Cir. 1986). So the ability to communicate and interact well with others might be a transferrable skill but only if it has a link to a specific work-related activity. As vaguely presented in the VE's testimony and the ALJ's decision here, however, skills such as "communication and interacting with others," etc., cannot be categorized as anything more than general aptitudes. *See, e.g.*, *Blake v. Sec'y of Health & Human Servs.*, 528 F. Supp. 881, 886 (E.D. Mich. 1981). And that simply is not good enough.

This Court therefore agrees with the plaintiff that the ALJ and VE failed to establish a link between the skills Higgs-Wilson obtained in her previous employment and other positions in the national economy. Moreover, Higgs-Wilson's ability to write and her knowledge of basic math—and perhaps the other "skills" that the VE identified and the ALJ adopted—are not transferable skills at all under 20 C.F.R. § 404.1568(d)(4) and SSR 82-41. Accordingly, this Court remands to the Commissioner to make further, specific findings regarding Higgs-Wilson's transferable skills.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion is DENIED, the plaintiff's motion is DENIED in part and GRANTED in part, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: June 19, 2019
           Buffalo, New York

                                      ***s/ Lawrence J. Vilardo***
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE